UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA L. RUPERT, Special
Administrator of the Estate of
IVAN L. RUPERT, JR., Deceased,

      Plaintiff,

v.

FREDA DAGGETT, d/b/a KFDGT
PILOT CAR SERVICES,

      Defendant.
_____/

Case No. 1:09-CV-221

HON. GORDON J. QUIST

## OPINION

Plaintiff, Sandra L. Rupert ("Plaintiff"), the Personal Representative of the Estate of Ivan L. Rupert, Jr. ("the deceased"), filed this diversity action on March 12, 2009, against Defendant, Freda Daggett ("Daggett"), on a negligence theory. The suit arises out of an accident between the deceased, who was operating a motorcycle at the time, and Michael Otteren ("Otteren"), a non-party who was traveling with Daggett across country, each driving separate vehicles, with Daggett in the lead. Daggett has filed a motion for summary judgment. For the reasons set forth below, the Court will grant the motion.

### I. Facts

The accident occurred on March 17, 2007. At that time, both Daggett and Otteren were self-employed as pilot-vehicle drivers, escorting trucks that haul large or wide-loads over highways. In the days leading up to the accident, Daggett and Otteren piloted a load together from Texas to California, traveling through New Mexico, a state which requires two pilot drivers. (Daggett Dep.

at 43-45.) After completing that job, the two decided to continue traveling together because they were both headed toward Michigan. (*Id.* at 48.) The route they chose took them through Utah, where they each stopped to receive their certifications for that state, then on through Colorado. (*Id.* at 48-50.) Throughout the trip, they stayed in contact through the CB radio, stopped at various rest areas and restaurants along the way, and varied which of the two was in the lead. (*Id.* at 49-54.)

Just before the accident, Daggett and Otteren were traveling eastbound on I-70 in Colorado, with Daggett in the lead. Otteren contacted Daggett on the CB and asked her to take the next exit so that he could adjust his mirror. (*Id.* at 58, 63.) The two took the next exit, pulled over on the exit ramp, and Otteren adjusted his mirror. (*Id.*) Thereafter, realizing that there was no eastbound entrance ramp, the two decided to re-enter the highway headed westbound and turn around at the first opportunity. (*Id.* at 63-64.) Approximately one mile up the expressway, Daggett informed Otteren that there was a turnaround that they could use just ahead. (*Id.* at 68; Otteren Dep. at 51.) Although it was marked with a sign designating it for "Emergency and Authorized Vehicles Only," both Daggett and Otteren testified that they regularly use such turnarounds while on the job. (Daggett Dep. at 65-66; Otteren Dep. at 77.)

After waiting for another vehicle to pass her, Daggett moved into the left lane and successfully made her turn into the median and onto eastbound I-70. (Daggett Dep. at 73-79.) Otteren, who was approximately a quarter mile behind Daggett as she made her turn, also moved into the left lane. (Otteren Dep. at 57.) Otteren testified that before he moved, he checked his mirrors and saw the decedent's motorcycle approximately 300 feet back. (*Id.* at 55.) Otteren successfully merged into the left lane, but as he moved onto the shoulder, preparing for the turn into the median, his truck and the decedent's motorcycle collided. (*Id.* at 60.) At the moment of impact, Daggett was already heading eastbound on I-70. She learned of the accident when Otteren contacted

2

her over the CB asking her to call 911 because a motorcycle had hit him. (*Id.* at 61; Daggett Dep. at 80-81.) Daggett then pulled her vehicle over, called 911, and walked to the scene. (Daggett Dep. at 83.) Otteren pled guilty to careless driving causing death or injury and was sentenced to six months in jail. (Ex. 1 to Def.'s Reply Br. at 2, 24.) Daggett was not charged with any offense or ticketed for her use of the turnaround.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

**A.    Choice of Law**

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Klaxon Co. V. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941). Because this case was filed in the United States District Court for the Western District of Michigan, Michigan's choice of law rules apply. Michigan courts apply Michigan law unless there exists some "rational reason" to displace it. *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d

466, 471 (1997). In making this determination, courts undertake a two step analysis:

> First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id.* "Although this balancing approach most frequently favors using the forum's (Michigan's) law, Michigan courts nonetheless use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Hall v. Gen. Motors Corp.*, 229 Mich. App. 580, 585, 582 N.W.2d 866, 868 (1998).

There are three states to be considered here: Michigan, where Daggett resides and the action was filed; Colorado, where the accident occurred; and Illinois, where Plaintiff resides[1]. To begin, Daggett asserts, and the Court agrees, that Illinois can be immediately excluded. The only connection Illinois has with this dispute is that it is the state in which Plaintiff resides, which alone is insufficient to support the choice of Illinois law. *Sutherland*, 454 Mich. at 287, 562 N.W.2d at 472 ("[T]he plaintiff's residence, with nothing more, is insufficient to support the choice of a state's law.").

Colorado's sole connection with this dispute is that the accident occurred within its borders. Where, as here, "neither party is a citizen of the state where the wrong occurred, that state has no interest in the litigation unless the issue is one involving conduct as opposed to compensation." *Mahne v. Ford Motor Co.*, 900 F.2d 83, 87 (6th Cir. 1990). Plaintiff argues that Daggett's "conduct" is precisely what is at issue and that Colorado has a strong interest in regulating the

---

[1] Because the personal representative stands in the place of the decedent, Plaintiff's residence is deemed to be that of the decedent at the time of his death. *Burney v. P V Holding Corp.*, 218 Mich. App. 167, 173-74, 553 N.W.2d 657, 660 (1996).

conduct of people on its roads and highways. The problem with Plaintiff's argument is that she also admits that Colorado and Michigan negligence law are essentially indistinguishable and that, regardless of which state's law applies, the result will be the same. In this respect, it is difficult to view Colorado's interest as "significant" and Michigan's as "minimal." *Hall*, 229 Mich. at 585, 582 N.W.2d at 868.

In addition to its general interest in regulating the conduct of people on its roads and highways, Plaintiff notes, Colorado, unlike Michigan, also holds people who act in concert to commit tortious acts jointly and severally liable for the resulting damage. COLO. REV. STAT. § 13-21-111.5(4) (2005) ("Joint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act."). Because Daggett and Otteren expressly agreed to turn around at the first opportunity and tacitly agreed to do so through an illegal u-turn, Plaintiff contends, their conduct is exactly what the Colorado statute was meant to deter. In support, Plaintiff cites *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049 (Colo. 1995). It is true that in that case, the Colorado Supreme Court construed §13-21-111.5(4) quite broadly. For example, it concluded that the term "tortious act" means "conduct other than breach of contract that constitutes a civil wrong and causes injury or damages," and could include mere negligence or negligence per se. *Id.* at 1055. Nonetheless, Plaintiff presents no case law, nor does the Court find any, supporting the proposition that a Colorado court would find that the conduct in this case qualifies as "*consciously conspir[ing]* . . . to commit a tortious act." COLO. REV. STAT. §13-21-111.5(4) (emphasis added).

Finally, because the facts of this case so closely mirror *Olmstead v. Anderson*, 428 Mich 1, 400 N.W.2d 292 (1987), the Court finds it unlikely that a Michigan court would apply Colorado law. *Mahne*, 900 F.3d at 86 ("[A] federal court in a diversity action is obligated to apply the law it

5

believes the highest court of the state would apply if it were faced with the issue.") That case involved a car accident that occurred in Wisconsin between a Minnesota Plaintiff and a Michigan Defendant. The court noted that because neither party had substantial contacts with, nor resided in, Wisconsin, the fact that the accident occurred in that state could only be described as "fortuitous." *Olmstead*, 428 Mich. at 23, 400 N.W.2d at 302. As in *Olmstead*, here "the accident - a completely unplanned event"- is the only contact with Colorado. *Id. Olmstead* admittedly differs from this case in that it involved a limitation of damages provision and such provisions are aimed at compensation, whereas § 13-21-111.5(4) is more likely aimed at conduct. Because of the improbability that § 13-21-111.5(4) actually applies to the facts presented here, however, the Court finds any interest Colorado may have to be insignificant and fails to overcome the presumption that Michigan law applies.

**B.     Law and Analysis**

In order to succeed on a negligence claim, the Plaintiff must establish four elements: (1) duty, (2) breach, (3) causation, and (4) damages. *Case v. Consumers Power Co.*, 463 Mich 1, 6, 615 N.W.2d 17, 20 (2000). Daggett argues that Plaintiff cannot make out a prima facie case of negligence for two reasons. First, Daggett was under no legal duty to protect the decedent from the actions of Otteren, a third party not under Daggett's control. And second, even if Daggett did owe Plaintiff a duty and breached it by unlawfully turning around in the median, Plaintiff cannot establish proximate cause because Otteren's negligent operation of his vehicle was an intervening, superseding cause that cut off Daggett's liability.

It is for the court to determine, as a matter of law, the threshold issue of whether a duty exists. *Murdock v. Higgins*, 454 Mich. 46, 53, 559 N.W.2d 639, 642 (1997). "In determining whether a legal duty should be imposed, the trial court should balance the societal interests involved,

6

the severity of the risk, the burden upon the defendant, the likelihood of occurrence, and the relationship between the parties." *Sierocki v. Hieber*, 168 Mich. App. 429, 434, 425 N.W.2d 477, 479 (1988). The duty question often turns on policy considerations and is "ultimately a question of fairness." *Marcelletti v. Bathani*, 198 Mich. App. 655, 665, 500 N.W.2d 124, 130 (1993).

In arguing for the lack of a legal duty, Daggett cites the general rule that, absent a special relationship, there is no general duty to protect an individual who is endangered by the conduct of a third person. *Sierocki*, 168 Mich. at 433, 425 N.W.2d at 479. Plaintiff does not address the issue of duty directly, but asserts that Daggett's use of the turnaround was unlawful and, therefore, amounts to negligence *per se* under Colorado law and raises a rebuttable presumption of negligence under Michigan law. *See Klinke v. Mitsubishi Motors Corp.*, 458 Mich. 582, 592, 581 N.W.2d 272, 276 (1998). The Court need not decide whether the facts of this case should give rise to a legal duty because it finds that Plaintiff cannot establish proximate cause. *See Cassibo v. Bodwin*, 149 Mich. App. 474, 477, 386 N.W.2d 559, 561 (1986) ("While violation of a statute creates a rebuttable presumption of negligence, the plaintiff still must show that such negligence was the proximate cause of his injuries."); *Babula v. Robertson*, 212 Mich. App. 45, 54, 536 N.W.2d 834, 839 (1995) ("Liability for negligence does not attach unless the plaintiff establishes that the injury in question was proximately caused by the defendant's negligence.").

A proximate cause is one which "operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred." *Ross v. Glaser*, 220 Mich. App. 183, 192-93, 559 N.W.2d 331, 336 (1996). Thus, an intervening cause, meaning "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed," is considered superseding and relieves the original actor of liability, "unless it is found that the intervening act was 'reasonably foreseeable.'"

*McMillian v. Vliet*, 422 Mich. 570, 576, 374 N.W.2d 679, 682 (1985). Although framed in terms of foreseeability, "[t]he existence or nonexistence of an intervening or superseding cause is largely a matter of policy." *Poe v. City of Detroit*, 179 Mich. App. 564, 577, 446 N.W.2d 523, 529-30 (1989). "It involves a determination that the connection between the wrongful conduct and the injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable." *Ross*, 220 Mich. App. at 193, 559 N.W.2d at 337. Although proximate cause is generally a question of fact for the jury, where reasonable minds could not differ, the court should decide the issue as a matter of law. *Transp. Dep't v. Christensen*, 229 Mich. App. 417, 424, 581 N.W.2d 807, 811 (1998).

In her motion for summary judgment, Daggett argues that even if she was negligent in having used the median to turn around, Otteren's negligent operation of his vehicle was a superseding cause that relieves Daggett of any liability. It was not foreseeable, Daggett asserts, that when following Daggett into the median, Otteren would proceed in a careless manner. Moreover, Daggett stresses, because she had no control over the manner in which Otteren operated his vehicle or the decisions he made while driving, it would be illogical to make her responsible for his actions. Plaintiff counters that it was not only foreseeable, but intended, that Otteren immediately follow Daggett in using the median. Because Daggett led Otteren into this illegal maneuver, Plaintiff asserts, proximate cause is, at a minimum, a question of fact for the jury.

The Court finds that reasonable minds could not differ: Otteren's negligent operation of his vehicle constitutes a superseding cause, cutting off any liability on the part of Daggett. Contrary to Plaintiff's suggestion, the question is not simply whether it was foreseeable that Otteren would follow Daggett in using the median to turn around, but whether it was foreseeable that Otteren would proceed carelessly when doing so. Plaintiff presents no evidence that Otteren was an unsafe

8

driver or would be inclined to follow Daggett into the median even if doing so would be unreasonably dangerous. Nor does Plaintiff present any proof that Daggett somehow directed or controlled the manner in which Otteren executed his turn. Although they were traveling together, Otteren was solely responsible for the safe operation of his vehicle. As a matter of policy, the mere fact that they were traveling together and Otteren was following Daggett's lead in deciding to use the median does not make her liable for his failure to use reasonable care when doing so. *See Mohr v. Broussard*, 515 So.2d 833, 835 (La. Ct. App. 1987) (holding, on nearly identical facts, that the lead drivers could not be held liable for the tailing driver's failure to exercise reasonable care simply because they were traveling together and they made the same maneuver in safety a few minutes before).

## IV. Conclusion

For the foregoing reasons, the Court will grant Daggett's motion for summary judgment.

An Order consistent with this opinion will be entered.


Dated: November 3, 2010               /s/ Gordon J. Quist
                                      GORDON J. QUIST
                                      UNITED STATES DISTRICT JUDGE